### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SAHARA CAMPBELL, *et al.,* for themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:22-cv-00199 |
| vs. | ) ) ) | Magistrate Judge Kimberly A. Jolson |
| PREMIERFIRST HOME HEALTH CARE, INC., *et al.,* | ) ) ) | |
| Defendants. | ) | |

### PLAINTIFFS' UNOPPOSED MOTION FOR ORDER PRELIMINARILY APPROVING CLASS & COLLECTIVE ACTION SETTLEMENT

Now come Sahara Campbell and Catherine Morris ("Representatives Plaintiffs"), by and through counsel, and respectfully move this Court for entry of an order (1) preliminarily approving a class action settlement pursuant to FED. R. CIV. P. 23 and approving a collective action settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (2) preliminarily certifying Representative Plaintiffs' claims under the Ohio Minimum Fair Wage Standards Act ("MFWSA"), O.R.C. 4111.01, *et seq.*, as a settlement class under FED. R. CIV. P. 23 and a collective under Section 216(b) of the FLSA, for settlement purposes only; (3) appointing Representative Plaintiffs' counsel as class counsel pursuant to FED. R. CIV. P. 23; (4) appointing CPT Group, Inc. as the claims administrator; (5) approving Sahara Campbell and Catherine Morris as Representative Plaintiffs of the Settlement Class for settlement purposes only; (6) approving the form, content, and manner of the Class Member Notice and Consent Form to be distributed to putative Class Members; and (7) scheduling a final approval hearing. This Motion incorporates by reference the definitions in the Settlement Agreement, and all terms defined herein shall have the

same meaning as set forth in the Settlement Agreement. Defendants Premierfirst Home Health Care, Inc. ("Premierfirst"), Ryan Doyle, and Abdillahi Yusuf (all Defendants, collectively, "Defendants") do not oppose this motion.

As explained in the accompanying memorandum of law, the Parties have reached a settlement in which Defendants will make payments to Representative Plaintiffs, Collective Members, and putative Class Members who submit a valid and timely Claim Form. The Collective and Class Members consist of current and former hourly employees who performed home health aide services for Premierfirst between January 20, 2019 and March 13, 2023 who worked more than 37.5 total hours in any workweek.

Forty-five (45) Collective Members (including Representative Plaintiffs) filed consents to join this lawsuit pursuant to the Court's March 13, 2023 Order granting conditional certification pursuant to 29 U.S.C. § 216(b) (ECF No. 42). As detailed in their memorandum of law, the Parties submit that their settlement of the Collective Members' claims is a reasonable resolution of the claims in this case and should be approved pursuant to 29 U.S.C. § 216(b).

The Parties also request that the Court preliminarily certify a FED. R. CIV. P. 23 class consisting of the Class Members solely for purposes of settlement. Towards that end, the Parties agree, for purposes of settlement, that the numerosity, commonality, typicality, and adequacy requirements of FED. R. CIV. P. 23 are satisfied and that the Class claims meet the requirements of FED. R. CIV. P. 23. The parties further agree that Representative Plaintiffs' counsel should be appointed as Class Counsel pursuant to FED. R. CIV. P. 23 and that CPT Group, Inc. should be appointed as the Claims Administrator for the purpose of administering the settlement. Finally, the Parties agree that the proposed form, content, and manner of Class Member Notice and Claim

Form is reasonably calculated to give the Class adequate notice of the settlement and an opportunity to object to it or opt out of it.

WHEREFORE, for the reasons set forth above and in the memorandum of law in support of this motion, Plaintiffs request that the Court enter an order:

1. Approving the settlement of the Collective claims in this case as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and granting preliminary approval of the Class claims in this case pursuant to FED. R. CIV. P. 23;

2. Granting certification pursuant to FED. R. CIV. P. 23 and Section 216(b) of a settlement class consisting of Collective and Class Members defined as current and former hourly employees who performed home health aide services for Premierfirst between January 20, 2019 and March 13, 2023, for settlement purposes only;

3. Approving Sahara Campbell and Catherine Morris as Representative Plaintiffs of the Settlement Class for settlement purposes only;

4. Appointing Greg R. Mansell, Carrie J. Dyer, and Rhiannon M. Herbert of Mansell Law, LLC as Class Counsel pursuant to FED. R. CIV. P. 23;

5. Appointing CPT Group, Inc. as the claims administrator for purposes of administering the settlement;

6. Approving the form, content, and manner of the Class Member Notice and Claim Form to the proposed Class; and

7. Setting a final approval hearing on a schedule consistent with the Parties' settlement agreement and the Court's calendar.

Respectfully submitted,

/s/ Carrie J. Dyer
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Rhiannon M. Herbert (0098737)
(*Rhiannon@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.,
Columbus, OH 43027
Ph: (614) 610-9899
Fax: (614) 547-3614

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT

### I.   INTRODUCTION

Representative Plaintiffs Sahara Campbell and Catherine Morris were employed by Defendants as home health aides. They initiated this hybrid class and collective action on January 20, 2022, asserting wage and hour claims against Defendants Premierfirst Home Health Care, Inc. ("Premierfirst"), Ryan Doyle, and Abdillahi Yusuf (all Defendants, collectively, "Defendants") under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). Plaintiffs allege that Defendants failed to properly compensate them at a rate of one and one-half times their regular rates of pay for all hours worked in excess of forty per workweek.

On March 3, 2023, pursuant to the Parties' stipulation, the Court conditionally certified this Action as a collective action pursuant to 29 U.S.C. § 216(b).  Following the order granting conditional certification, Collective Members opted into the Action by filing consent forms pursuant to 29 U.S.C. § 216(b).

The Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendants' defenses to such claims. This involved exchanging Plaintiffs' payroll and schedule information with Plaintiffs' Counsel and using this information to make a calculation of Plaintiffs' alleged damages resulting from Defendants' alleged failure to properly pay overtime compensation. On March 26, 2024, the Parties engaged in the second of two arm's-length mediations with Mediator James Gordon. The Parties reached a settlement of this Litigation upon stated terms and conditions, which are now set forth in the fully-executed Settlement Agreement, attached as Exhibit 1.

The Parties desire to fully, finally, and forever settle, compromise, and discharge all Settled Claims as to all Released Parties, as those terms are defined below. The basic terms of the Settlement Agreement provide for a Maximum Settlement Fund of $350,000. As set forth more fully below, Defendants have agreed to pay Individual Settlement Payments from the Settlement Fund to: 1) Collective Members who have already consented to join this Action; and 2) Class Members who timely returned a Claim Form and do not opt out of the settlement. The portion of the Settlement Fund made available for payment of Individual Settlement Payments will be determined after subtracting the amounts payable for Class Representative Enhancement Payments, Claims Administration Expenses, and Attorneys' Fees & Costs.

Plaintiffs seek class representative enhancement payments of Five Thousand Dollars ($5,000.00) ("Enhancement Payments") to each of the two Representative Plaintiffs, Sahara Campbell and Catherine Morris, which Defendants do not oppose. In addition, Class Counsel will apply for an award of One Hundred Sixteen Thousand, Six Hundred Sixty-Seven Dollars and No Cents ($116,667.00) for attorneys' fees and One Thousand, Three Hundred and Thirty Dollars and Seventeen Cents ($1,330.17) for litigation costs, for a total of One Hundred and Seventeen Thousand, Nine Hundred and Ninety-Seven Dollars and Seventeen Cents ($117,997.17), which Defendants will not oppose.

In exchange for these payments, Collective and Class Members will provide the Released Parties with a release of all wage and hour claims. Representative Plaintiffs will execute a global release of claims.

Plaintiffs respectfully submit that their proposed settlement is a fair, reasonable, and adequate resolution of this litigation. As such, Plaintiffs ask that this Court enter an order: (1) Approving the settlement of the Collective claims in this case as fair, reasonable, and adequate

under 29 U.S.C. § 216(b) and granting preliminary approval of the Class claims in this case pursuant to Fed. R. Civ. P. 23; (2) Granting certification pursuant to Fed. R. Civ. P. 23 and Section 216(b) of a settlement class consisting of Collective and Class Members defined as current and former hourly employees who performed home health aide services for Premierfirst between January 20, 2019 and March 13, 2023, for settlement purposes only; (3) Approving Sahara Campbell and Catherine Morris as Representative Plaintiffs of the Settlement Class for settlement purposes only; (4) Appointing Greg R. Mansell, Carrie J. Dyer, and Rhiannon M. Herbert of Mansell Law, LLC as Class Counsel pursuant to Fed. R. Civ. P. 23; (5) Appointing CPT Group, Inc. as the claims administrator for purposes of administering the settlement; (6) Approving the form, content, and manner of the Class Member Notice and Claim Form to the proposed Class; and (7) Setting a final approval hearing on a schedule consistent with the Parties' settlement agreement and the Court's calendar.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

On January 20, 2022, Representative Plaintiffs filed this action as a class and collective action under the FLSA, 29 U.S.C. §§ 201 et seq., the OMFWSA, and Fed. R. Civ. P. 23 on behalf of themselves and all Collective and Class Members against Premierfirst. (ECF No. 1).  On December 6, 2022, Plaintiffs moved the Court to amend the Complaint to add Ryan Doyle and Abdillahi Yusuf as individual Defendants to this Action. The Court granted Plaintiffs' motion on February 9, 2023 (ECF No. 36).

Plaintiffs assert that Defendants failed to pay proper overtime wages to Collective and Class Members at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 per workweek. Plaintiffs brought their FLSA claims as an opt-in collective action

under 29 U.S.C. § 216(b) and their state law OMFWSA claims as an opt-out class action under Fᴇᴅ. R. Cɪᴠ. P. 23. Defendants have denied any wrongdoing. In addition, Defendants contend that Plaintiffs' claims were not amenable to class action certification.

On October 14, 2022, the Parties engaged in the first of two arm's length mediations with James H. Gordon. The Parties were unsuccessful in reaching a settlement at that time.

On March 3, 2023, pursuant to the Parties' stipulation, the Court conditionally certified this Action as a collective action pursuant to 29 U.S.C. § 216(b).[1] Following the Order granting conditional certification, Collective Members were provided notice and an opportunity to opt into the Action by filing consent forms pursuant to 29 U.S.C. § 216(b). There are currently 45 Collective Members (including Representative Plaintiffs).[2]

On March 26, 2024, the Parties engaged in a second arm's-length mediation with Mediator James Gordon, during which the Parties reached a settlement of this Litigation. Beginning in advance of the first mediation in October 2022 and continuing until the Parties' second mediation on March 26, 2024, the Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendants' defenses to such claims. This involved exchanging Plaintiffs' payroll and schedule information with Plaintiffs' Counsel then using this information to make a calculation of the damages Plaintiffs claim resulting from Defendants' alleged failure to properly pay overtime compensation.

The Parties have now formalized the terms and procedure in the parties' Settlement Agreement, which is being presented to the Court as Exhibit 1 to this Motion, which resolves all

---

[1] Representative Plaintiffs have not filed a motion for certification of the Class pursuant to Fᴇᴅ. R. Cɪᴠ. P. 23.

[2] As set forth in the Settlement Agreement, this does not include the Opt-In Plaintiffs who were dismissed from this litigation via the Court's March 5, 2024 Report and Recommendation (ECF No. 73). These individuals are not eligible for a settlement payment.

claims asserted in the lawsuit. Based on their investigation, Plaintiffs' Counsel is of the opinion that the settlement with Defendants is fair, reasonable, and adequate, and is in the best interests of the Plaintiffs in light of all known facts and circumstances, including the risks of significant delay, the very possible risk of an inability to collect from Defendants at a later time, and the defenses asserted by Defendants. (See Declaration of Attorney Carrie J. Dyer (hereinafter "Dyer Dec."), attached as Exhibit 2, ¶17)

### B. <u>Terms of the Settlement Agreement</u>

#### 1. **Collective and Class Members**

For purposes of settlement only, the Parties define Collective and Class Members as current and former hourly employees who performed home health aide services for Premierfirst between January 20, 2019 and March 13, 2023 who worked more than 37.5 total hours in any workweek. (Settlement Agreement, ¶16)

Pursuant to the Court's March 13, 2023 Order granting conditional certification pursuant to 29 U.S.C. § 216(b), forty-five (45) individuals, including Representative Plaintiffs, have already filed consents to join this lawsuit, and are referred to as "*Collective Members*." (Settlement Agreement, ¶17) "*Class Member*" refers to all persons who are encompassed in the definition of Collective and Class Members, but who did not file consents to join the lawsuit. These individuals are still putative Class Members with respect to the Representative Plaintiffs' Federal Rule of Civil Procedure 23 class claims. (Settlement Agreement, ¶14) The Parties agree and consent to the certification of the Litigation as a class action pursuant to Federal Rule of Civil Procedure 23 <u>for settlement purposes only</u>. (Settlement Agreement, ¶31)

9

### 2.      Notice & Claims Made Procedure

The Settlement Agreement provides that the Claims Administrator shall mail the Class Member Notice and Claim Form, attached to the Settlement Agreement as Exhibit A, to Class Members via First Class United States mail, postage prepaid.  The Notice and Claim Form shall inform all Class Members of their rights under this Agreement.  (Settlement Agreement, ⁋35) If any Notices are returned as undeliverable, the Claims Administrator shall forward them to any forwarding addresses provided by the U.S. Postal Service.

In order to be eligible to receive an Individual Settlement Payment, Class Members must make a claim by completing the Claim Form affixed to the Class Member Notice (Exhibit A to the Settlement Agreement). Collective Members (i.e., Collective and Class Members who filed consents to join the lawsuit pursuant to the Court's March 13, 2023 Order granting conditional certification pursuant to 29 U.S.C. § 216(b)) do not have to make an additional claim and shall be deemed to have made a claim to entitle them to Individual Settlement Payments. (Settlement Agreement, ⁋40) Class Members must submit their completed Claim Form to the Claims Administrator no later than the deadline identified on the Claim Form ("Claim Form Deadline") in order to be eligible for their Individual Settlement Amount. (Settlement Agreement, ⁋38) The Claim Form Deadline is thirty days from the date the Class member Notice and Claim Form is sent to the Class Members. (Settlement Agreement, ⁋40(b))

### 3.      Opt-Out and Objection Process

Class Members may request exclusion from the Settlement by "opting out." Class Members who choose to opt out of the Settlement must mail a request for exclusion to the Claims Administrator within thirty (30) days of the date the Class Member Notice and Claim Form was sent. (Settlement Agreement, ⁋51) To be valid, requests to opt out must be signed by the individual,

contain their name, address, and telephone number, must clearly state that the individual wishes to opt out of the Settlement and must be postmarked – whether sent via U.S. Mail, facsimile, electronic mail, or pursuant to any other instruction contained in the Class Member Notice and Claim Form – within thirty (30) days of the date the Class Member Notice and Claim Form was sent to them. (Settlement Agreement, ¶51(a)) Any Class Member who does not affirmatively opt out of the Settlement by submitting a timely and valid request for exclusion shall be bound by all terms of the Settlement Agreement, including the Release of Claims (described below), as well as any judgment that may be entered by the Court if it grants final approval of the Settlement. (Settlement Agreement, ¶51(g))

Class Members who wish to object to the Settlement must do so in writing, must be signed, and must include a description of the basis of the objection. (Settlement Agreement, ¶52(a)). To be considered, such statement must be filed with the Court and served upon all counsel of record within thirty (30) days of the date the Class Member Notice and Claim Form was sent. (Settlement Agreement, ¶52) Any Class Member who fails to timely file and serve a written objection in this manner shall be deemed to have waived any objections. Any person who does not serve timely written objections to the Settlement shall not be permitted to present their objections to the Settlement at the Final Approval Hearing and shall be foreclosed from seeking review of the Settlement by appeal or otherwise. (Settlement Agreement, ¶52)

### 4. Settlement Payments

The Settlement Agreement provides for a Maximum Settlement Fund of Three Hundred and Fifty Thousand Dollars ($350,000) ("Settlement Fund"). The Settlement Fund represents the maximum amount available for payment of Individual Settlement Payments, Class Representative

Enhancement Payments, Claims Administration Expenses, and Attorneys' Fees & Costs. (Settlement Agreement, ¶42(b))

The portion of the Settlement Fund made available for payment of Individual Settlement Payments will be determined after subtracting the amounts payable for Class Representative Enhancement Payments, Claims Administration Expenses, and Attorneys' Fees & Costs. Individual Settlement Payments will be distributed to Collective Members and Class Members who have timely returned a Claim Form, on a pro rata basis as follows:

> Collective Member Calculations. Plaintiffs' Counsel has already completed calculations reflecting alleged half-time overtime damages for Collective Members using payroll records provided by Defendants throughout the course of this Action. These alleged damages were calculated by reviewing Collective Members' biweekly payroll records. For biweekly pay periods in which a Collective Member worked at least 81 hours, Plaintiffs' Counsel calculated overtime owed between January 20, 2019 – April 23, 2022 (when Premierfirst began paying one and one-half times the regular rate for hours worked). This calculation was done by subtracting the total biweekly hours by 80, then multiplying that figure by 0.5 times the Collective Member's regular rate of pay to determine the "half-time" overtime damages.

> Class Member Calculations. Upon receipt from Defendants' counsel of payroll records for any Class Member who returns a Claim Form as described above, Plaintiffs' counsel will perform the same half-time overtime damages calculations as described above, for the period of time between January 20, 2022 (the date this action was filed) and January 20, 2020 (two years prior to the date this action was filed).

(Settlement Agreement, ¶ 42(c)) Notwithstanding the calculations described herein, in the event that a Collective Member or Class Member who timely submits a Claim Form does not have any half-time overtime damages according to Class Counsel's calculations, the individual will receive a nominal settlement payment in the amount of Fifty Dollars ($50.00) in exchange for their agreement to the Release of Claims described below. (*Id.*)

Upon the close of the Claim Form Period, Plaintiffs' Counsel will provide Defendants' Counsel and the Claims Administrator with half-time overtime damages calculations for Collective

Members and Class Members who have returned Claim Forms. The Claims Administrator will determine Individual Settlement Payments by dividing the amount of the Settlement Fund available to be paid as settlement payments pro rata among the Collective Members and Class Members. (Settlement Agreement, ¶42(c))

In addition, the Settlement Agreement provides for enhancement payments to Representative Plaintiffs Sahara Campbell and Catherine Morris in the amount of Five Thousand Dollars ($5,000) each. (Settlement Agreement, ¶43).

As for attorneys' fees and litigation expenses, under the terms of the settlement agreement, Class Counsel will make a fee application to the Court in an amount of One Hundred Sixteen Thousand, Six Hundred Sixty-Seven Dollars and No Cents ($116,667.00) for attorneys' fees and One Thousand, Three Hundred and Thirty Dollars and Seventeen Cents ($1,330.17) for litigation costs, for a total of One Hundred and Seventeen Thousand, Nine Hundred and Ninety-Seven Dollars and Seventeen Cents ($117,997.17), which Defendant will not oppose. (Dyer Dec. ¶19) Plaintiffs will seek approval of this award by the Court in its final order approving the settlement. That award will be paid out of the from the Settlement Fund. (Settlement Agreement, ¶44; Dyer Dec. ¶20)

The Settlement Fund will also be used to pay for the Claims Administration expenses, which are currently estimated to be approximately $15,000. (Settlement Agreement, ¶45; Dyer Dec. ¶21)

### 5.    Final Approval & Release of Claims

The Parties request that the Court schedule a Fairness Hearing on the settlement between sixty (60) and seventy-five (75) days after the Court's entry of the Preliminary Approval Order. (Settlement Agreement, ¶33) At this Hearing, the Parties will request the entry of a Final Order

granting final approval of the Settlement, approving the proposed distributions set forth herein, and dismissing this Action with prejudice. If the Court grants final approval, the claims of all Collective and Class Members who did not opt out of the lawsuit will be dismissed with prejudice, they will release the claims described below, and they will be mailed their proportionate share of their respective Individual Settlement Payment by the Claims Administrator. (*Id.*).

Collective and Class Members who do not opt out of the settlement will release Defendants and Released Parties, from:

> any and all charges, claims, causes of action, actions, lawsuits, demands, demands for arbitration, complaints, liabilities, obligations, promises, agreements, rights, and controversies of any kind, whether known or unknown, for any remedies whatsoever, including monetary relief, injunctive relief, declaratory relief, equitable relief, damages, special damages, liquidated damages, wages, compensation, benefits, restitution, disgorgement, attorneys' fees, costs, expenses, losses, debts, interest, penalties, civil penalties, and fines, whether direct or indirect, whether under federal law or the law of any state, whether suspected or unsuspected, which any Collective or Class Member has had, now has, or may have in the future against the Released Parties for any act occurring on or before the date on which preliminary approval is granted relating to the payment of wages, hours worked, or based on the facts that were or reasonably could have been alleged in the Litigation, including, but not limited to, claims relating to wages, compensation, work performed off-the-clock, regular rate calculations, hours worked, payments for hours worked, payments for travel time, and all claims under the Fair Labor Standards Act and Ohio Minimum Fair Wage Standards Act during the Released Claim Period (the "**Settled Claims**").

> (Settlement Agreement, ⁋53(b))

In addition to the release set forth above at Paragraph 53(b), and in consideration for the Class Representative Enhancement Payments, the Representative Plaintiffs release the Released Parties from:

> any and all charges, claims, demands, actions, causes of action, or suits, at law or in equity, of whatsoever kind or nature, losses, costs, attorneys' fees, and expenses and damages of any kind, known or unknown, which they may now have or may now or hereafter assert against the Released Parties based on their employment with

14

Defendant, including, but not limited to all claims for violation of any rights under any federal, state, or local statute, regulation or ordinance, including, but not limited to, Ohio Revised Code Chapter 4112, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Fair Labor Standards Act, the Family and Medical Leave Act, the Rehabilitation Act of 1973, the Reconstruction Act of 1866, the National Labor Relations Act, the Employee Retirement Income Security Act of 1974, the Consolidated Omnibus Budget Reconciliation Act, and the Sarbanes Oxley Act, all as amended to the date hereof, and all other federal, state, and local statutes, rules, regulations, ordinances, orders or common law principles, including qui tam actions.  Nothing in this Settlement Agreement shall be construed to prohibit the Representative Plaintiffs from filing a charge or complaint with the EEOC, OCRC, NLRB, or any other federal, state, or local agency, except as to the Settled Claims, or participating in any investigation or proceeding conducted by such administrative agencies.

(Settlement Agreement, ¶53(c))

## III.   LAW AND ARGUMENT

Insofar as the settlement agreement proposes to settle claims brought under the OMFWSA and FLSA, the settlement is subject to approval by the Court under FED. R. CIV. P. 23(e) and 29 U.S.C. § 216(b).  As explained below, approval is warranted under both provisions.

### A.   Preliminary Approval of the Settlement Under Rule 23(a) and (b) is Appropriate

#### 1.   Certification of the Settlement Class Is Appropriate

A proposed settlement class must satisfy the requirements of FED. R. CIV. P. 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), *citing, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  In this case, the Parties' proposed settlement class (the "Rule 23 Class") satisfies those requirements.

The Rule 23 Class meets the requirements of numerosity, commonality, typicality, and adequacy of representation set forth in FED. R. CIV. P. 23(a). *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626.  The Rule 23 Class consists of 223 members, and thus, is "so numerous that joinder of all

members is impracticable." FED. R. CIV. P. 23(a); (Dyer Dec. ⁋12)  Representative Plaintiffs assert that there are questions of law or fact that are common to the class, including (a) whether Defendants violated the OMFWSA and FLSA by failing to pay employees for hours worked in excess of forty hours per week at the proper overtime rate; (b) whether Defendants' alleged violations of the OMFWSA and FLSA were knowing and willful; and (c) what amount of unpaid overtime compensation is allegedly due to members of the Rule 23 Class. (Amended Complaint, ECF No. 37, ¶ 57).  The claims of the Representative Plaintiffs are typical of the Rule 23 Class, insofar as they all stem from Defendants' alleged policy of paying hourly home health care workers their regular rate of pay for hours worked, rather than time and one-half times their regular rate of pay for hours worked in excess of 40 per workweek.  The Representative Plaintiffs are adequate representatives of the Rule 23 Class, in that they have common interests with other putative class members, assert that they have suffered the same alleged overtime violations, and have vigorously prosecuted the interests of the class through Class Counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Rule 23 Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority for settlement purposes. *Senter*, 532 F.2d at 522; *UAW,* 497 F.3d at 626.  The unpaid overtime issues presented under the OMFWSA and FLSA, which are based on alleged uniform policies and practices that apply to all hourly home health aides employed by Defendants during the relevant time period, predominate over questions affecting only individual members. More specifically, Representative Plaintiffs' claims are based on Defendants' method of computing overtime payments for these employees—namely, the failure to compensation these individuals at a rate of one and one-half times their regular rates of pay for hours worked in excess of 40 per workweek.  Representative Plaintiffs allege that these practices apply to all Class Members,

making questions of law and fact that are common to the Rule 23 Class predominate over individualized issues.

In addition, class-wide resolution of this controversy is superior to the alternative of litigating 223 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2. The Class Member Notices Satisfy Rule 23 and Due Process.

Federal Rule of Civil Procedure 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 F. App'x 364 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW,* 497 F.3d at 626, *citing*, *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008), *citing*, *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-944 (10th Cir.2005); *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel*, 534 F.3d at 514 (6th Cir. 2008), *citing*, *DeJulius,* 429 F.3d at 944; *Mullane,* 339 U.S. at 313-14; *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-1111 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994). The issue is not whether all class members received notice, "but whether

the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514, *quoting*, *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).

The "individual notice" requirement of Rule 23(e) and due process is fulfilled by sending written notice to class members by first-class mail, at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes,* 513 F.2d 114, 120 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975). Such notice is the "best notice practicable" in a class action. *Grunin*, 513 F.2d at 121; *Eisen*, 417 U.S. at 175.

In the present case, the proposed Class Member Notice satisfies these requirements. Under the terms of the Settlement Agreement, the Class Member Notice and Claim Form will be sent to Class Members via First Class United States mail, postage prepaid to the addresses shown in Defendants' records. The Notice informs Class Members of the claims asserted in the lawsuit; contains a summary of the settlement; sets forth each individual's rights to make a claim to the settlement, object to the settlement, or opt-out of the settlement; and provides them with the ability to seek more information and copies of the settlement documents from the Claims Administrator. (Settlement Agreement, ¶35; see also Exhibit A to the Settlement Agreement) If any Notices are returned as undeliverable, the Claims Administrator will forward them to any forwarding addresses provided by the U.S. Postal Service. (Settlement Agreement, ¶36) This process is reasonably calculated to apprise the Class Members of the pendency of the settlement and afford them an opportunity to present their objections or opt out of the settlement.

**B.** **Preliminary Approval of the Settlement Under Rule 23(e) is Appropriate**

Under Federal Rule of Civil Procedure 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497

F.3d 615, 626, *citing*, *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-923 (6th Cir.1983). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they readily lend themselves to compromise. 4 Newberg On Class Actions §11.41 (4th ed. 2007). Therefore, when considering the seven factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F.Supp.2d 1142, 1145-1146 (M.D. Fla. 2005), *citing*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 626. And, unlike Rule 23 class certification for purposes of litigation, certification of a Rule 23 class solely for the purposes of settlement does not require the court to engage in an analysis of manageability. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, syl. 2(b), 620 (1997) ("whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial"). As explained below, the seven-factor standard supports approval of the settlement in this case.

### a.    *No Indicia of Fraud or Collusion Exists.*

The parties reached a settlement in this case following more than two years of contentious litigation and after two extensive arms-length mediations with Court-appointed Mediator James Gordon.  (Dyer Dec. ¶ 9) There is no indicia of fraud or collusion.

### b.    *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the parties continue to disagree over the merits of Representative Plaintiffs' claims. Defendants maintain that its pay policies and procedures did not violate the OMFWSA or FLSA.  While Defendants stipulated to conditional certification of the FLSA Collective, if the litigation proceeds, Defendants expressed an intention to file a decertification motion as to the FLSA claims.  Defendants also intend to oppose certification under FED. R. CIV. P. 23 as to Representative Plaintiffs' state law claims.

In addition, the parties disagree as to whether the two-year limitations period for non-willful violations or a three-year limitations period for willful violations applies.  Defendants claim that even if the Representative Plaintiffs succeed on the merits, they cannot prove a willful violation of the law, and thus, only a two-year limitations period would apply.  Further, Defendants assert, because they acted in good faith, no liquidated damages should be awarded even if the Representative Plaintiffs are able to prevail on their claims.

Thus, if forced to litigate this case further, the parties would engage in complex, costly, and protracted litigation.  The settlement, on the other hand, provides substantial relief to the Representative Plaintiffs and the Collective and Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class-wide resolution.

      **c.**     *The Parties Sufficiently Investigated the Claims and Defenses Asserted.*

The parties engaged in substantial investigation prior to negotiating the settlement agreement. Prior to filing the lawsuit, Class Counsel conducted a factual investigation into the claims and state of the law. (Dyer Dec. ⁋4) Beginning in advance of the Parties' first mediation in October 2022 and continuing until the Parties' second mediation on March 26, 2024, the Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendants' defenses to such claims. (Dyer Dec. ⁋14) This involved exchanging Plaintiffs' payroll and schedule information with Plaintiffs' Counsel, and using this information to make a calculation of Plaintiffs' alleged damages resulting from Defendants' alleged failure to properly pay overtime compensation. (Dyer Dec. ⁋15) Thus, the legal issues were thoroughly researched by the parties and the value of the claims properly assessed.

      **d.**     *The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval.*

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Defendants have asserted, and continue to assert, various factual, legal, and procedural defenses to Representative Plaintiffs' claims, including those set forth in Defendant's Motion to Dismiss for Failure to State a Claim or in the Alternative Motion to Strike (ECF No. 45). Representative Plaintiffs face potential decertification of their collective action and denial of certification of their class claims. Moreover, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Defendants acted in good faith and Representative Plaintiffs failed to establish a willful violation of the law. Further, an individualized process to determine the amount of recovery for each Collective and Class Member could take many months to resolve, after which an appeal

could be filed. Importantly, based on representations made by Defendants' counsel and Plaintiffs' counsel's review of relevant financials provided by Defendants, Plaintiffs have had to give serious consideration to their inability to collect a judgment from Defendants if litigation continues. (Dyer Dec. ¶18)

On the other hand, Defendants face the prospect of class-wide liability to more than 200 current and former employees, as well as liquidated damages and attorneys' fees following lengthy and expensive litigation. These considerations all support that both sides could prevail on critical elements of their claims, while carrying significant risk in proceeding to a judgment on the merits in this case. Consequently, this factor weighs in favor of approval of the settlement.

### e. *The Opinions of Class Counsel and Representative Plaintiffs Favor Approval.*

The Parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this settlement. And, for the reasons set forth above, Class Counsel is of the opinion that the settlement is a fair, reasonable, and adequate resolution of this litigation. Likewise, Representative Plaintiffs, who attended both mediations, agree that the settlement is fair and reasonable, and they assent to the terms of the settlement.

### f. *The Reaction of Absent Class Members Will Likely Favor Approval.*

Absent class members will not be informed of the settlement until notice is authorized by the Court. Based on the terms of the settlement and input of the Representative Plaintiffs, however, it is anticipated that their reaction will be positive.

### g.     *The Public Interest Favors Approval.*

Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. *Edwards v. City of Mansfield*, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); *Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), *quoting*, *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1992).   Settlement agreements assure that plaintiffs will receive compensation for the alleged violations at issue.  As one district court in this Circuit explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." *Edwards*, 2016 U.S. Dist. LEXIS 64159 at *10.

The same is true here.  The settlement promotes public interest by providing fair and efficient payments to Collective and Class Members, avoiding the continued expenditure of judicial resources on complex litigation, and eliminating the risks that both parties face through the litigation process—including Plaintiffs' risk of an inability to collect from Defendants in the future.

### 2.     The Settlement Distributions are Fair, Reasonable, and Adequate

As part of the scrutiny it applies to a class and collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *9 (E.D. Ky. Oct. 23, 2008), *citing*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). In the present case, the settlement establishes a Maximum Settlement Fund of $350,000 that will be distributed to Representative Plaintiffs, Collective Members who have already opted-in to the lawsuit, and Class Members who file a

timely and valid Claim Form, while also covering all litigation expenses and costs, attorneys' fees, and claims administration costs. Those Settlement Funds will be distributed to Collective and Class Members on a pro rata basis based upon each individual's overtime damages. Class Counsel will be provided with payroll records, and will perform a damage calculation, for each individual entitled to an Individual Settlement Payment (i.e., Representative Plaintiffs, Collective Members who have already opted-in to the lawsuit, and Class Members who file a timely and valid Claim Form). These will be calculated by reviewing the individual's biweekly payroll records. For biweekly pay periods in which the individual worked at least 81 hours, Class Counsel will calculate overtime owed between January 20, 2019 – April 23, 2022 (when Premierfirst began paying one and one-half times the regular rate for hours worked). This calculation will be done by subtracting the total biweekly hours by 80, then multiplying that figure by 0.5 times the individual's regular rate of pay to determine the "half-time" overtime damages. This method ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by Collective and Class Members and will provide them with a proportionate share of the settlement funds.

Additionally, class representative enhancement payments will also be made to the Representative Plaintiffs. Service awards to representative plaintiffs recognizing the value of their services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent. 130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997).

In the present case, Representative Plaintiffs Sahara Campbell and Catherine Morris seek a service award of $5,000 each. These individuals provided factual information to Class Counsel, faithfully communicated with Class Counsel, and subjected themselves to the responsibilities of serving as Representative Plaintiffs in a lawsuit against their employer. (Dyer Dec. ₱22). Additionally, Representative Plaintiffs appeared at and participated during both lengthy mediations in this case. (Dyer Dec., ₱23).

Moreover, the proposed $5,000 service awards set forth in the agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, *20 (S.D. Ohio July 11, 2014)(approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *Abadeer v. Tyson*, 3:09-cv-00125, Dkt. 420 (M.D. Tenn. October 17, 2014)(approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Bijoux v. Amerigroup N.Y., LLC*, 2016 U.S. Dist. LEXIS 68969, *4 (E.D.N.Y. May 12, 2016)(awarding service payments between $2,000 and $10,000 to participating plaintiffs); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc*., 2013 U.S. Dist. LEXIS 152087, *4 (W.D. Wis. Oct. 23, 2013)(approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 hybrid action); *Hyun v. Ippudo USA Holdings*, 2016 U.S. Dist. LEXIS 39115, *6 (S.D.N.Y. Mar. 24, 2016)(service awards representing 5% of the

settlement fund are "well within the range of service awards recently approved" in FLSA cases). Hence, the $5,000 service awards to the Representative Plaintiffs in this case are appropriate.

Finally, Class Counsel will make a separate fee application to the Court, which will be paid by Defendants from the Settlement Fund.

### C.    Approval of the Settlement under 29 U.S.C. § 216(b) is Appropriate

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date"). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1358, fn.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-1354. Thus, if the proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Id.* at 1354.

In this case, as detailed above, the settlement was a result of arm's-length negotiations resulting in a reasonable, fair, and adequate resolution for the Collective Members who opted into this lawsuit following the Court's March 13, 2023 Order granting conditional certification pursuant to 29 U.S.C. § 216(b). Accordingly, Plaintiffs request that the Court approve the FLSA settlement as well.

### IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court enter an order:

1.     Approving the settlement of the Collective claims in this case as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and granting preliminary approval of the Class claims in this case pursuant to FED. R. CIV. P. 23;

2.     Granting certification pursuant to FED. R. CIV. P. 23 and Section 216(b) of a settlement class consisting of Collective and Class Members defined as current and former hourly employees who performed home health aide services for Premierfirst between January 20, 2019 and March 13, 2023, for settlement purposes only;

3.     Approving Sahara Campbell and Catherine Morris as Representative Plaintiffs of the Settlement Class for settlement purposes only;

4.     Appointing Greg R. Mansell, Carrie J. Dyer, and Rhiannon M. Herbert of Mansell Law, LLC as Class Counsel pursuant to FED. R. CIV. P. 23;

5.     Appointing CPT Group, Inc. as the claims administrator for purposes of administering the settlement;

6.     Approving the form, content, and manner of the Class Member Notice and Claim Form to the proposed Class; and

7.     Setting a final approval hearing on a schedule consistent with the Parties' settlement agreement and the Court's calendar.

Respectfully submitted,


*/s/ Carrie J. Dyer*
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Rhiannon M. Herbert (0098737)
(*Rhiannon@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.,
Columbus, OH 43027
Ph: (614) 610-9899
Fax: (614) 547-3614


## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024 a copy of the foregoing motion and exhibits were filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


*/s/ Carrie J. Dyer*
Carrie J. Dyer (0090539)

28