IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SAHARA CAMPBELL**, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:22-cv-199 |
| | : | |
| v. | : | |
| | : | |
| **PREMIERFIRST HOME HEALTH CARE INC.**, *et al.*, | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter, in which the parties consented to the Undersigned's jurisdiction under 28 U.S.C. § 636(c), is before the Court on Defendants' Motion to Extend Settlement Agreement Payment Schedule (Doc. 104) and Plaintiffs' Cross-Motion to Enforce the Settlement Agreement (Doc. 106). The Court **DENIES** Defendants' Motion and **GRANTS** Plaintiffs' Cross-Motion **in part**.

**I.     BACKGROUND**

In this action, Plaintiffs sued Defendants on behalf of themselves and others similarly situated, alleging that their former employer, Defendant Premierfirst Home Health Care Inc. ("Premierfirst"), failed to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111. (Doc. 37 at ¶¶ 18–34).

After years of litigation and multiple mediation sessions, the parties reported they settled the case on March 26, 2024. (Doc. 75). Several months of negotiations on the exact language and terms of the settlement followed. (*See* Docs. 80, 82, 84, 86, 88, 90, 92, 94, 95, 96 (status reports and vacated status conferences concerning the parties' settlement)). Finally, on October 23, 2024,

Plaintiffs filed an unopposed motion for the Court's preliminary approval of the parties' class and collective action settlement. (Doc. 97). Additionally, Plaintiffs submitted a copy of the parties' fully executed Settlement Agreement. (Doc. 97-1).

Subject to the Court's approval, the Settlement Agreement certified the litigation as a "settlement class and collective action" under Federal Rule of Civil Procedure 23 and Section 216(b) of the FLSA. (Doc. 98 at 2; *see also* Doc. 97-1 at 5–6 (noting that if the Court did not approve the settlement, the Rule 23 class would be decertified)). Under its terms, Defendants had to pay a maximum of $350,000, including $117,997.17 in attorneys' fees and litigation costs. (Doc. 97-1 at 11). The first payment of $250,000 was due within 30 days of the Agreement's effective date. (*Id.* at 9; *see also id.* at 4 (defining "effective date" as "the date on which this Settlement becomes effective, which shall mean one (1) day following the last date the Final Order and Judgment entered by the Court finally approving this Agreement is appealable (30 days after the entry of Judgment), if no appeal is filed")). Beginning 30 days after that first payment, Defendants were required to make 12 monthly payments, totaling $100,000. (*Id.* at 9).

On October 29, 2024, the Court preliminarily approved the Settlement Agreement. (Doc. 98). After holding a fairness hearing on January 14, 2025, the Court entered a final approval order and judgment on February 3, 2025. (Docs. 101, 102, 103).

But the settlement quickly derailed. Rather than make their first payment of $250,000, Defendants filed the instant Motion to extend their payment schedule because of their "deteriorated" financial condition. (Doc. 104 at 1–2, 2 n.1). For their part, Plaintiffs oppose any extension of the payment schedule. (Doc. 106). Instead, Plaintiffs ask the Court to enforce the parties' settlement agreement as written. (*Id.*). They seek judgment in their favor as to Defendants' breach of the Agreement; pre-judgment and post-judgment interest; attorneys' fees

and costs; and an order "[p]rohibiting Defendants from selling real estate or otherwise moving assets . . . in an anticipated attempt to escape their financial obligations pursuant to the Agreement." (*Id.* at 1).

The parties have fully briefed both Motions, and the matters are ripe for review. (Docs. 104, 106, 108, 109).

## II. DISCUSSION

The parties' motions hinge on whether this Court has the authority to extend the Settlement Agreement's payment schedule. It does not. As a result, Defendants' deadline to make the first settlement payment has passed, and Defendants have breached the Settlement Agreement. Plaintiffs are entitled to most, but not all, of the remedies they seek.

### A. Authority to Modify the Settlement Agreement

Rule 23 of the Federal Rules of Civil Procedure gives courts "broad authority to manage class actions and to enter appropriate orders to control the actions of counsel and parties." *In re S. Ohio Corr. Facility*, 191 F.3d 453 (Table), 1999 WL 775830, at *7 (6th Cir. Sept. 24, 1999) (citing Fed. R. Civ. P. 23(d)). Even so, the power is not unlimited. When it comes to settlement agreements, the court cannot "alter the terms of the agreement" and may enforce a settlement only as it was agreed to by the parties. *Brown v. Cnty. of Genessee*, 872 F.2d 169, 173 (6th Cir. 1989) (quoting *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)); *In re S. Ohio Corr. Facility*, 1999 WL 775830, at *4–5 (noting that, under Rule 23, courts can approve or reject a class action settlement only as negotiated by the parties). Put differently, even in class actions, the court cannot "require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986).

Defendants say the Court doesn't need to change the Settlement Agreement to grant their

3

extension. Instead, they say the Court must modify only its own order approving the parties' settlement. (Doc. 108 at 2, 3 ("[T]he Court would not be substituting its own judgment for that of the Parties, and instead, would be responding to Defendants' request which is supported by good cause."); *see also* Doc. 104 at 5–6). And, considering this is a class action, Defendants argue the Court has the inherent power to do so. (Doc. 108 at 2).

Defendants offer two cases to support their argument. (Doc. 106 at 5 (citing *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194–95 (3rd Cir. 2000)); Doc. 108 at 2 (citing *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2018 WL 1138541, at *1 (N.D. Ill. Mar. 2, 2018))). Neither are on-point. To begin, both involve late claims submitted by class members, not extensions to settlement payment schedules. *In re Cendant*, 233 F.3d at 193; *In re Sears*, 2018 WL 1138541, at *3. Plus, in *In re Cendant*, the court, not the parties, set the deadline for late claims from class members. 233 F.3d at 193 (finding the deadline was not agreed upon or set by the parties). And the *In re Sears* court found that allowing late claims did not "materially change[] the Settlement Agreement," since the parties' settlement contemplated "some flexibility with regard to 'Valid Claims' and extensions of time." 2018 WL 1138541, at *3.

This case is different. Here, the parties, not the Court, set the settlement payment schedule. (Doc. 102 at 2 (final approval order incorporating the Settlement Agreement), 4 ("The Parties are hereby directed to implement and consummate the Settlement Agreement *according to its terms and provisions*." (emphasis added)); Doc. 97-1 (the Agreement)). Further, the parties did not contemplate any extensions to that schedule without both sides' written consent. (Doc. 97-1 at 20 (noting the parties could agree to extensions "in writing"); *see also id.* (saying modifications to the Agreement could not be made unless the changes were "in writing and signed by counsel for all

4

Parties and approved by the Court")). The parties also retained the discretion to reject any modifications suggested or directed by the Court. (*Id.* ("The Parties *may* agree in writing to modifications of the Agreement or its attachments at the direction of the Court." (emphasis added)).

Still more, the payment schedule, "in its exact form," was a material term of the settlement. (*Id.*). The parties said as much in their Agreement. (*Id.* at 20, ¶ 68 ("All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.")). Consequently, any extension to Defendants' payment deadline would be a material alteration to the terms to which the parties agreed. Clear precedent forbids this Court from making such changes. *See Brown*, 872 F.2d at 173; *Brock*, 841 F.2d at 154; *In re S. Ohio Corr. Facility*, 1999 WL 775830, at *7.

On similar facts, at least one other court has reached the same conclusion. In *Riley v. MoneyMutual, LLC*, the district court preliminarily approved a class action settlement, which included a payment deadline. No. 16-4001, 2020 WL 1872923, at *1 (D. Minn. Apr. 14, 2020). Before the settlement was finally approved, the defendants requested more time to pay. *Id.* at *2. Noting that the parties had a similar materiality clause as is present here, the court rejected the defendants' argument that extending the payment deadline was not a material change. *Id.* at *1, 2–3. Extending that logic, the court concluded it had no authority to modify the payment deadline or force "the parties to accept a settlement to which they have not agreed." *Id.* at *3 (quoting *Rawa v. Monsanto Co.*, 934 F.3d 862, 871 (8th Cir. 2019)).

So too here. The parties negotiated an inflexible payment schedule, and the Court cannot extend Defendants' payment deadline without materially changing the Settlement Agreement. Because Plaintiffs do not consent to such a modification, the Motion (Doc. 104) is **DENIED**.

### B. Enforcement of the Settlement Agreement

Defendants missed their deadline to make the first settlement payment. Consequently, Plaintiffs seek a judgment that Defendants have breached the Settlement Agreement.

Because enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit," it "requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). Where, as here, an order of dismissal expressly includes a provision retaining jurisdiction, the district court has the authority to enforce a settlement agreement. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641–43 (6th Cir. 2001) (citing *Kokkonen*, 511 U.S. at 381); (Doc. 102 at 6 ("This Court expressly retains jurisdiction as to all matters relating to the . . . enforcement . . . of the Settlement Agreement[.]")).

To enforce a settlement, the Court first "must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc.*, 271 F.3d at 645–46 (citing *Brock*, 841 F.2d at 154). While an evidentiary hearing is sometimes required on this point, "where an agreement is clear and unambiguous and no issue of fact is present," "summary enforcement of a settlement agreement" is appropriate. *Id.* (citations omitted).

As discussed, the parties memorialized the terms of their settlement in their written Agreement. (Doc. 97-1). Defendants do not dispute that fact or any term of the Agreement. (Docs. 104, 108). To that point, the Settlement Agreement plainly requires Defendants to make the first settlement payment of $250,000 within 30 days of the Agreement's effective date. (Doc. 97-1 at 9–10). Defendants missed their deadline, and they have not made any payments while these Motions were pending. (Doc. 108 at 7). As a result, the Court must enforce the Settlement Agreement against them for the $250,000 owed. Plaintiff's Motion, on this front, is **GRANTED**.

### C. Available Remedies

Because the Court finds Defendants breached the Settlement Agreement, the posture of Plaintiffs' cross-motion is the same as if Plaintiffs had prevailed in a separate breach-of-contract action. *Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-cv-1298, 2018 WL 1127653, at *6 (N.D. Ohio Mar. 2, 2018) ("[A] settlement agreement may be enforced either through filing an independent action for breach of contract or by filing a motion to enforce the settlement in the same action." (internal quotation omitted)) (analyzing what remedies are available for a breach of contract on a motion to enforce a settlement agreement).

Now, Plaintiffs seek several remedies. First, they ask for an award of pre-judgment and post-judgment interest. (Doc. 106 at 1). Second, they request attorneys' fees and costs resulting from Defendants' breach. (*Id.*). Lastly, Plaintiffs want an order prohibiting Defendants "from selling real estate or otherwise moving assets to other entities or persons in an anticipated attempt to escape their financial obligations pursuant to the Agreement." (Doc. 109 at 1). The Court awards Plaintiffs their first two requests, but not their last.

#### 1. Interest

The parties' Settlement Agreement says nothing about pre- or post-judgment interest, so Defendants argue Plaintiffs should be awarded neither. (Doc. 108 at 5; *see generally* Doc. 97-1). The Court disagrees and finds Plaintiffs are entitled to both.

Starting with pre-judgment interest, the parties' Settlement Agreement is governed by Ohio law under its choice-of-law provision. (Doc. 97-1 at 19); *Jackson v. Reliance Const. Co. Servs., LLC*, No. 1:20-cv-799, 2023 WL 4933269, at *5 (S.D. Ohio Aug. 2, 2023) (saying the enforceability of settlement agreements is governed by state contract law). Under Ohio Revised Code § 1343.03(A), when a party breaches a contract, like the Settlement Agreement, the

7

prevailing party is entitled to receive pre-judgment interest. *Wilson*, 2018 WL 1127653, at *4 (citing Ohio Rev. Code § 1343.03(A)); *Jackson*, 2023 WL 4933269, at *5; *see also Broad Street Energy Co. v. Endeavor Ohio, LLC*, No. 2:12-cv-711, 2014 WL 12657033, at *2 (S.D. Ohio Nov. 14, 2024) ("The award of pre-judgment interest to the prevailing party in a breach-of-contract suit is mandatory." (citation omitted)).  The Court's role is limited to determining "what legal rate of interest applies" and "how much interest is due." *Jackson*, 2023 WL 4933269, at *5 (internal quotation omitted).

Under Ohio Revised Code § 1343.03(A), interest starts to accrue whenever the claim "became due and payable." *Id.*  Based upon the Settlement Agreement, Defendants' first settlement payment of $250,000 was due on April 5, 2025. (Doc. 97-1 at 9–10; Doc. 104 at 2 n.1). But the parties say they extrajudicially agreed to a deadline of April 4 because April 5 was a Saturday. (Doc. 104 at 2 n.1; Doc. 106 at 4). Even so, the Settlement Agreement requires any modifications or extensions of time to be made in writing. (Doc. 97-1 at 20). And the Court has no written evidence before it showing the parties agreed to an April 4 deadline. (*See generally* Docs. 104, 106, 108, 109 (including no written agreements or emails between the parties)). As a result, the Court must apply the Settlement Agreement as written and awards pre-judgment interest from April 5 to the date of this Order.

As to the interest rate, Ohio Revised Code § 1343.03(A) provides that pre-judgment interest is calculated "at the rate per annum" under Ohio Revised Code § 5703.47, "unless a written contract provides a different rate."  As noted, the parties' Settlement Agreement is silent on interest. (Doc. 97-1). Therefore, the appropriate rate is that set by Ohio Revised Code § 5703.47 for 2025—a simple rate of eight percent.  *See* Ohio Rev. Code § 5703.47(B); *In the matter of the Determination of the Interest Rates Pursuant to Section 5703.47 of the Ohio Revised Code*, Ohio

8

Dep't of Taxation Admin. Journal Entry (Oct. 15, 2024), *available at* https://dam.assets.ohio.gov/image/upload/tax.ohio.gov/individual/2025_Interest_Rates.pdf (last accessed May 6, 2025); *Iron Workers Dist. Council of S. Ohio & Vicinity Benefit Tr. v. C&C Reinforcing LLC*, No. 3:22-cv-179, 2023 WL 7336188, at *2 (S.D. Ohio Nov. 7, 2023) ("[C]ourts in Ohio have consistently held, that in the absence of a statutory provision or specific agreement to the contrary, only simple interest accrues." (internal quotation omitted)).

Turning to post-judgment interest, this request is governed by 28 U.S.C. § 1961. *Jackson*, 2023 WL 4933269, at *6. Section 1961 provides that the Court must award post-judgment interest "on any money judgment in a civil case." 28 U.S.C. § 1961(a). In other words, "[t]he district court has no discretion to deny post-judgment interest." *Jackson*, 2023 WL 4933269, at *6; *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002). Such interest is "calculated from the date of the entry of the judgment," and "shall be computed daily to the date of payment." *Caffey*, 302 F.3d at 586 (internal quotation and quotation marks omitted). Further, "post-judgment interest should be awarded on the entire amount of the judgment, including any pre-judgment interest." *Jackson*, 2023 WL 4933269, at *6 (citations omitted). This ensures that a prevailing party is compensated fairly "for the loss from the time between the ascertainment of the damage and the payment by the [breaching party]." *Caffey*, 302 F.3d at 586; *see also Broad Street Energy Co.*, 2014 WL 12657033, at *4.

Applied here, because Defendants have breached the Settlement Agreement, the Court must award Plaintiffs post-judgment interest at the applicable statutory rate until this Order is satisfied. Under Section 1961, Plaintiffs are entitled to such interest commencing on the date of this Order. *Caffey*, 302 F.3d at 586; 28 U.S.C. § 1961(a). And that award includes the entire judgment amount, including the pre-judgment interest discussed above. *Caffey*, 302 F.3d at 586.

In sum, Plaintiffs are entitled to pre-judgment interest from April 5 to the date of this Order under Ohio Revised Code § 1343.03(A). And, under 28 U.S.C. § 1961, they are entitled to post-judgment interest at the applicable statutory rate commencing on the date of this Order. As detailed below, Plaintiffs must submit a calculation of pre-judgment interest for the Court's review within **fourteen (14) days of the date of this Order**.

        2.        *Attorneys' Fees and Costs*

Next is Plaintiffs' request for attorneys' fees and costs. Ohio courts follow the "American Rule," which requires parties to bear their own attorneys' fees. *Moxley v. Pfundstein*, 801 F.Supp.2d 598, 604 (N.D. Ohio 2011) (citing *McConnell v. Hunt Sports Enters.*, 725 N.E.2d 1993 (Ohio Ct. App. 1999)). The rule has three exceptions: "(1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provides for fee shifting." *Id.* (citation omitted).

The third exception matters here. The Settlement Agreement provides that "[i]n the event either party breaches [it], the prevailing party shall be entitled to its reasonable attorneys' fees and costs." (Doc. 97-1 at 19). Defendants seemingly concede that they should pay at least some of Plaintiffs' attorneys' fees and costs resulting from their failure to pay. (Doc. 104 at 7–8 (saying Defendants are "prepared to pay Plaintiffs' counsel reasonable attorneys' fees associated with notifying affected class members of the delay in settlement"); Doc. 108 at 1 (saying Defendants "have already agreed to pay the reasonable attorneys' fees")). More importantly, they do not assert that they had unequal bargaining power during the settlement process, or that the parties did not freely negotiate the Settlement Agreement's fees and costs provision. *Cf. Moxley*, 801 F.Supp.2d at 604 (noting attorney fee provisions are unenforceable in such situations). And the record

contains no evidence suggesting as much.

Therefore, the Court will enforce the parties' bargained-for settlement terms. Plaintiffs are entitled to their reasonable attorneys' fees and costs incurred because of Defendants' breach of the Agreement. (Doc. 97-1 at 19). Plaintiffs are **ORDERED** to file a motion for attorneys' fees and costs **within fourteen (14) days of the date of this Order**. Defendants shall file any response **ten (10) days thereafter**, and no replies shall be filed without the Court's permission.

   3.   *Other Relief*

Finally, the Court turns to Plaintiffs' request for an order prohibiting Defendants from selling or moving assets and property. (Doc. 106).

While Plaintiffs assert the Court can issue this type of order, they cite no Federal Rule or basis for this request. (*Id.* at 8). Instead, they cite a single case from the Sixth Circuit, *EBSCO Industries, Inc. v. Lilly*, 840 F.2d 333 (6th Cir. 1988). (*Id.* (saying the case stands for the proposition that courts have the "authority to order defendants to preserve assets for the payment of anticipated judgments"). There, the Sixth Circuit considered whether the district court could use its injunctive powers under Federal Rule of Civil Procedure 65, rather than its attachment power under Federal Rule of Civil Procedure 64, to preserve assets prior to trial or judgment. *EBSCO Indus., Inc.*, 840 F.2d at 334. Ultimately, the Sixth Circuit concluded that "an injunction may not issue if there is an adequate remedy at law," so district courts must consider the appropriateness of pre-judgment attachment under Rule 64 before granting relief under Rule 65. *Id.* at 335–36.

Assuming Plaintiffs intend to request relief under these Rules, the Court finds they have not met their burden for either. Beginning with pre-judgment attachment, Rule 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for

11

seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). "When resolving questions of pre-judgment attachment, federal courts in Ohio apply [Ohio Revised Code §] 2715." *PCA-Corr., LLC v. Akron Healthcare LLC*, No. 1:20-cv-428, 2021 WL 1582984, at *1 (S.D. Ohio Apr. 22, 2021). Under this statute, "a court can grant an order of attachment only if it finds . . . that there is probable cause to support the motion." *Data Processing Sci. Corp. v. Lumenate Techs., LP*, No. 1:16-cv-295, 2016 WL 3144117, at *2 (S.D. Ohio June 6, 2016) (internal quotation omitted).

Since attachment "is an extraordinary remedy," the statute has specific requirements. *PCA-Corr., LLC*, 2021 WL 1582984, at *1 (citing *Data Processing Scis. Corp.*, 2016 WL 3144117, at *3). For instance, a plaintiff seeking such relief must submit an affidavit setting forth information such as "[t]he nature and amount of the plaintiff's claim," the facts supporting the grounds for attachment, "[a] description of the property sought and its approximate value," and "the location of the property." Ohio Rev. Code § 2715.03(A)–(D). Further, "upon the filing of a motion for an order of attachment," a plaintiff must also file "with the clerk of court a praecipe instructing the clerk to issue to the defendant against whom the motion was filed a notice of the proceeding." *Aragonite Cap. Mkts., LLC v. Dark Horse Media, LLC*, No. 1:22-cv-222, 2022 WL 614678, at *7 (N.D. Ohio Mar. 2, 2022) (quotation omitted); *see also* Ohio Rev. Code § 2715.041(A).

In this case, Plaintiffs have filed neither of these documents. (Docs. 106, 109). Nor have they provided any information about what property they want the Court to restrict. (*Id.*). As a result, Plaintiffs are not entitled to relief under Ohio Revised Code § 2715. *See, e.g.*, *Aragonite Cap. Mkts., LLC*, 2022 WL 614678, at *7–8 (denying relief under Rule 64 where the plaintiff did not "strictly comply with the notice requirements set forth in Ohio Rev. Code § 2715.04(A)" or file a praecipe); *Hook v. Baker*, No. C2-02-901, 2004 WL 3133716, at *3 (S.D. Ohio Sept. 7, 2004)

(denying a motion for pre-judgment attachment where the plaintiff did not attach an affidavit).

Plaintiffs also fail to meet the requirements of Rule 65. To issue injunctive relief under this Rule, a court "must consider four factors: 1) whether the moving party has a strong likelihood of success on the merits; 2) whether the moving party will suffer irreparable injury without the injunction; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuance of the injunction." *QSI-Fostoria DC, LLC v. Gen. Elec. Cap. Bus. Asset Funding Corp.*, No. 3:02-cv-7466, 2005 WL 81902, at *4 (N.D. Ohio Jan. 14, 2005) (citing *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003)).

Plaintiffs' Motion includes no analysis of or even a mention of these factors. (Doc. 106 at 8). Plaintiffs also fail to explain how they will be harmed if injunctive relief is not granted. (*Id.*); *see EOG Res., Inc. v. Lucky Land Mgmt., LLC*, __ F.4th __, 2025 WL 10998086, at *10–12 (6th Cir. 2025) (saying injunctive relief cannot be granted without a finding of irreparable harm). While they say they fear Defendants will move assets to avoid their financial obligations under the Settlement Agreement, they offer no evidentiary support for those assertions. (Doc. 106 at 8; *cf.* Doc. 108 at 7 (saying Defendants are selling assets "to make the settlement payments as quickly as possible")). In other words, these concerns are speculative. *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (saying injunctive relief under Rule 65 cannot be granted for "speculative or theoretical" harms).

All told, Plaintiffs have not provided the Court with a basis to grant their request for an order freezing Defendants' assets. And they have not provided enough evidence or arguments to support an award of such relief under either Rule 64 or Rule 65. Therefore, Plaintiffs' request is **DENIED**.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Extend Settlement Agreement Payment Schedule (Doc. 104) is **DENIED**, and Plaintiffs' Cross-Motion to Enforce the Settlement Agreement (Doc. 106) is **GRANTED in part**. The Court cannot extend Defendants' deadlines under the Settlement Agreement's payment schedule. Defendants have breached the Settlement Agreement. Defendants are **ORDERED** to pay to Plaintiffs the $250,000 owed under the Settlement Agreement; pre-judgment interest to be calculated by Plaintiffs; post-judgment interest starting on the date of this Order; and Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' breach.

**Within fourteen (14) days of the date of this Order**, Plaintiffs are **ORDERED** to submit (1) a proposed judgment entry reflecting the amount of pre-judgment interest that has accrued from April 5, 2025, to the date of this Order, and (2) a motion for reasonable attorneys' fees and costs. Defendants' response to Plaintiffs' motion for fees is **due ten (10) days thereafter**. No replies shall be filed without leave from the Court.

IT IS SO ORDERED.

Date: May 6, 2025                                             /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE